729 F.2d 1100
 Medicare&Medicaid Gu 33,663
UNITED STATES of America ex rel. the STATE OF WISCONSIN
(DEPARTMENT of HEALTH and SOCIAL SERVICES) and
Wisconsin Department of Justice,
Plaintiffs-Appellees,
v.
Alice R. DEAN, M.D., Defendant-Appellant.
 No. 83-1815.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 1, 1983.
Decided March 5, 1984.
As Corrected March 7, 1984.
 
 Janice A. Rhodes, Shellow, Shellow & Glynn, Milwaukee, Wis., for defendant-appellant.
 Peter Cannon, Milwaukee, Wis., for plaintiffs-appellees.
 Before PELL, BAUER, Circuit Judges, and MAROVITZ, Senior District Judge.*
 BAUER, Circuit Judge.
 
 
 1
 The United States District Court for the Eastern District of Wisconsin found jurisdiction for this qui tam[1] action under the federal False Claims Act, 31 U.S.C. Secs. 231-233 (1976), despite its finding that the suit was "based upon evidence or information in possession of the United States ... at the time [the] suit was brought." 31 U.S.C. Sec. 232(C). The district court's order finding jurisdiction was certified to this court as an interlocutory appeal, pursuant to 28 U.S.C. Sec. 1292(b) (1976). We reverse.
 
 
 2
 * Defendant Alice R. Dean is a medical doctor who at one time practiced psychiatry in the Milwaukee area. In 1980 the defendant was found guilty in state court of making fraudulent claims for Medicaid reimbursements in connection with her medical practice. State v. Dean, Case No. J-4775 (Cir.Ct., Milw. Cty.1979). The court sentenced the defendant to probation and ordered her to pay $13,285 in restitution to the State of Wisconsin. As a consequence of her conviction, the State permanently revoked the defendant's license to practice medicine in Wisconsin.
 
 
 3
 On September 9, 1980, the State of Wisconsin's Departments of Justice and Health and Social Services (the State) filed suit in federal district court against the defendant under the False Claims Act, 31 U.S.C. Secs. 231-233 (1976). The False Claims Act gives parties other than the federal government both a private right of action against persons who submit false claims to the federal government and a portion of any recovery. The complaint here alleged that the defendant submitted approximately 912 fraudulent claims for reimbursement for psychiatric services between March 1974 and February 1976. The State demands relief of $2,000 per false claim (the statutory forfeiture amount), $47,343.76 damages on behalf of the United States, $15,808.12 compensatory damages on a pendent claim, $150,000 punitive damages, and costs.
 
 
 4
 To exercise a private right of action, the qui tam plaintiff must provide the United States Attorney General with a copy of the complaint and "a disclosure in writing of substantially all evidence and information in his possession material to the effective prosecution of such suit." 31 U.S.C. Sec. 232(C). The United States then has sixty days upon notification of the qui tam action "within which to enter appearance in such suit." Id. The plaintiff may maintain the action even though the government declines to join unless "it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought." Id.
 
 
 5
 The United States declined to join this action.[2] After considering all of the arguments and evidence, the district court held that "the information upon which the instant case is based was sufficiently in the possession of the United States to enable the federal government to adequately investigate the case and make a decision whether to prosecute." Nonetheless, the district court interpreted the legislative history of section 232(C) and denied the defendant's motion to dismiss for lack of subject matter jurisdiction. The district court certified this interlocutory appeal on the ground that its decision to find subject matter jurisdiction "involves a controlling question of law ... and that an immediate appeal ... may materially advance the ultimate termination of the litigation." 28 U.S.C. Sec. 1292(b). We accepted jurisdiction and now reverse.
 
 II
 
 6
 The district court properly recognized that the jurisdictional bar of section 232(C) applies whenever the government has knowledge of the "essential information upon which the suit is predicated" before the suit is filed, even when the plaintiff is the source of that knowledge. United States ex rel. Weinberger v. Florida, 615 F.2d 1370, 1371 (5th Cir.1980). Although the courts consistently have interpreted the unambiguous language of section 232(C) to admit no exception when the government possesses such "essential information,"[3] the district court examined the legislative history of the False Claims Act and determined that the State of Wisconsin could maintain a qui tam action when the State was the source of "essential information" and when the State was required to provide such information to the federal government as part of its participation in the Medicare reimbursement program. A contrary result, the district court reasoned, "would frustrate the purpose of Congress in protecting the United States against false claims."
 
 
 7
 * We are not persuaded by the State's contention that the district court improperly determined that the State's complaint was "based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time" the complaint was filed. 31 U.S.C. Sec. 232(C). The evidence which the government possesses need not be a "mirror image of that in the hands of the qui tam plaintiff." The evidence and information need only be "sufficient to enable [the government] adequately to investigate the case and to make a decision whether to prosecute." Pettis ex rel. United States v. Morrison-Knudsen Co., 577 F.2d 668, 674 (9th Cir.1978). In the district court, the defendant showed that the government possessed such "sufficient information." First, the Wisconsin Medicaid Fraud Control Unit provided the United States Department of Health and Human Services with many reports about the allegedly fraudulent Medicaid claims during the State's investigation and prosecution of the appellant on state criminal grounds. Many of those reports were required from the State under 42 C.F.R. Sec. 455.17 (1980). Second, the state criminal proceedings were reported extensively in two Milwaukee newspapers. Finally, the Milwaukee County Assistant District Attorney who prosecuted the appellant in the state criminal proceedings acted as a Special United States Attorney at the time of the prosecution. The district court thus properly determined that the government possessed adequate information as contemplated by section 232(C).
 
 B
 
 8
 In order to establish an exception to overcome the plain language of the False Claims Act, we must find a "clearly expressed legislative intention" contrary to that language. Consumer Product Safety Comm'n v. GTE Sylvania, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The district court concluded that the legislative history of the Act was clear enough to overcome the statute's unambiguous language. Our own review of the legislative history leads us to the opposite conclusion.
 
 
 9
 Many courts have reviewed the legislative history of the False Claims Act since the jurisdictional bar at issue here was added in 1943. See, e.g., Safir v. Blackwell, 579 F.2d 742 (2d Cir.1978), cert. denied, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979); Pettis, 577 F.2d 668; United States ex rel. Bayarski v. Brooks, 154 F.2d 344 (3d Cir.1946); United States v. Pittman, 151 F.2d 851 (5th Cir.1946); United States ex rel. Vance v. Westinghouse Electric Corp., 363 F.Supp. 1038 (W.D.Pa.1973); United States v. Aster, 176 F.Supp. 208 (E.D.Pa.1959), aff'd, 275 F.2d 281 (3d Cir.), cert. denied sub nom. Aloff v. Aster, 364 U.S. 894, 81 S.Ct. 223, 5 L.Ed.2d 188 (1960); United States v. Armour & Co., 146 F.Supp. 546 (D.D.C.1956). In each of these cases a party challenged the jurisdictional bar by seeking an exception to the plain language of the statute. The various courts all held that no exception exists.
 
 
 10
 For example, the Pettis court denied jurisdiction for a qui tam plaintiff despite the plaintiff's contention that section 232(C) was inapplicable "when an informer prior to bringing suit supplies the government with the information which under 31 U.S.C. Sec. 232(C) invokes the bar." 577 F.2d at 669. The court reviewed extensively the legislative history of the False Claims Act presented by the parties here in support of their respective interpretations of the jurisdictional bar of the Act.
 
 
 11
 Congress enacted the jurisdictional bar at issue here in reaction to United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), in which the Supreme Court held that a qui tam action was not barred merely because the qui tam plaintiff may have obtained the information for his complaint from an indictment or other public record and thus may have contributed nothing to the discovery of the fraud upon the government. Although Congress's immediate concern in enacting the 1943 amendment was to do away with the "parasitical suits" allowed by Hess, the language and effect of the 1943 amendment in fact is much broader. The amendment itself was the result of a compromise between very different remedies proposed in each House of Congress.
 
 
 12
 The House of Representatives passed a bill to completely abolish qui tam suits. The Senate, on the other hand, sought to allow qui tam actions if they were based either upon information not in the possession of the United States or upon information in the possession of the United States of which the qui tam plaintiff was the source. The compromise amendment allowed qui tam actions that the United States did not join to continue if the information was not in the possession of the United States at the time the action was brought, thereby incorporating only the first part of the original Senate proposal.
 
 
 13
 As the Pettis court observed, "why [Congress] struck the particular compromise it did remains obscure." 557 F.2d at 671. Nonetheless, the State would have us conjecture as to Congress's rationale for the compromise amendment. The State would have us read the House Conference Report language on the compromise proposal that "[t]he conferees ... have followed to some extent the pattern of the Senate amendments," H.R.Rep. No. 933, 78th Cong., 1st Sess. 4, reprinted in 89 Cong.Rec. 10844, 10845 (1943), to mean that the conference committee rejected the wording of the original Senate proposal in favor of the compromise proposal because the committee considered the Senate proposal an unnecessary clarification of the compromise proposal finally adopted. Appellees' Br. at 17. We decline to undertake this strained reading of the House Report.
 
 
 14
 The State also relies on the statements of Senator Van Nuys during floor debate of the original Senate proposal. Senator Van Nuys, in response to protests to any decrease in federal court jurisdiction for qui tam actions under the False Claims Act, stated that the original Senate proposal "protects the honest informer as nearly as we can do it by statute [and] ... would not prevent an honest informer from coming in." 89 Cong.Rec. 7609 (1943). Although Senator Van Nuys was chairman of the Senate Judiciary Committee which originally proposed the Senate version of section 232(C) and although Senator Van Nuys was a member of the conference committee which drafted the proposal finally enacted by Congress, his remarks certainly do not control the result here, Weinberger v. Rossi, 456 U.S. 25, 35 & n. 15, 102 S.Ct. 1510, 1517 & n. 15, 71 L.Ed.2d 715 (1982), and clearly are insufficient standing alone to overcome the clear language of the statute. Consumer Product Safety Comm'n v. GTE Sylvania, 447 U.S. at 108, 100 S.Ct. at 2056.
 
 
 15
 For the same reasons, the State's attempts to use the statements of Representatives Kefauver and Walter before the House of Representatives are unpersuasive. Representative Kefauver, who was not a member of the conference committee that drafted the compromise proposal, summarized what he considered the essence of the proposal: "[I]f the average, good American citizen ... had the information and he gives it to the Government, and the Government does not proceed in due course, provision is made here where that suit can be brought and where he can get some compensation." 89 Cong.Rec. 10844. Similarly, Representative Walter, a member of the conference committee, stated during the debate that the committee intended to stop parasitical suits and had "no desire to interfere with suits which are brought honestly and legitimately by informers in which the United States were not a party." 89 Cong.Rec. 10846. Representative Walter also explained that "actions in which informers brought suits in good faith, and [in which] information was not available to the Department of Justice, ... then, under this compromise measure, those informers will have the right to proceed with their actions and recover." Id. Representative Kefauver's statements, although ambiguous, as the Pettis court points out, cannot overcome the plain language of section 232(C). Representative Walter's statements merely confirm that the proposal eliminates "parasitical suits." Representative Walter's statements thus also are insufficient to justify the exception the State now seeks.
 
 C
 
 16
 In United States v. Aster, 176 F.Supp. 208, aff'd, 275 F.2d 281, the court held that the jurisdictional bar of section 232(C) is "broad enough to cover information obtained by the government from any source whatever." 176 F.Supp. at 209. United States v. Pittman, 151 F.2d 851, one of the earliest cases decided under section 232, lends support to that conclusion. In Pittman, the court discussed how the jurisdictional bar of section 232(C) was absolute where the government possessed the essential information upon which a qui tam action is based and the government declines to join the suit. We must not lightly dismiss the weight of these early interpretations of section 232(C). Longstanding acceptance by the courts of section 232(C)'s construction, coupled with Congress's failure to reject these reasonable interpretations, weigh significantly in favor of accepting section 232(C) as an absolute bar. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 733, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1975).[4]
 
 
 17
 The State seeks to distinguish Pettis, Aster, and Pittman on the ground that they involved private citizens rather than a state government as the source of the information which creates the jurisdictional bar. The State argues that Congress did not contemplate a state government as the qui tam plaintiff when it enacted the 1943 amendment, and that the state therefore is not included within the jurisdictional bar. This contention is without support in the legislative history of the amendment.
 
 
 18
 The State contends that the distinction between private citizens and states is justified because the state is required to provide the federal government with the very information that creates the jurisdictional bar of section 232(C). Under Title XIX of the Social Security Act, 42 U.S.C. Secs. 1396-1396p, states that receive grants from the federal government under the Act must report various fraud and abuse information to the Health Care Financing Administration of the Department of Health and Human Services. 42 C.F.R. Sec. 455.17 (1980). The State contends that this reporting requirement alone is sufficient to create an exception to the False Claims Act. The House Conference Report on the compromise amendment to the False Claims Act stated that under the amendment "[i]t will not be possible to abate a pending suit if before such suit was filed such person had in his possession and voluntarily disclosed to the Attorney General substantial evidence or information which was not theretofore in the possession of the Department of Justice." H.R.Rep. No. 933, 89 Cong.Rec. at 10845. Even if we were to interpret this language to admit the exception which Pettis, Aster, and Pittman denied, which we do not, the language clearly excludes the appellees where they were required to provide the government with the information upon which this action was based; such information was not, therefore, "voluntarily disclosed."
 
 
 19
 Moreover, nothing in the legislative history of the Social Security Act supports finding an exception to the False Claims Act in this case. Only in the rarest instance will a court find an exception to a statute when Congress has not directly amended that statute. Galvan v. Hess Oil Virgin Islands Corp., 549 F.2d 281, 288 (3d Cir.1977). Cf. Cohen v. United States, 201 F.2d 386, 393 (9th Cir.1953) ("[S]pecific legislation will not be held to have repealed by implication more general legislation in this field where another reasonable construction can be applied."). We will not use the Social Security Act to fashion an exception to the False Claims Act.
 
 
 20
 If the State of Wisconsin desires a special exemption to the False Claims Act because of its requirement to report Medicaid fraud to the federal government, then it should ask Congress to provide the exemption. As the Supreme Court stated in United States ex rel. Marcus v. Hess, 317 U.S. at 546-47, 63 S.Ct. at 385-86, when it refused to create the jurisdictional bar that Congress later provided by the 1943 amendment to the False Claims Act:
 
 
 21
 The government presses upon us strong arguments of policy against the statutory plan, but the entire force of these considerations is directed solely at what the [state] thinks Congress should have done rather than at what it did.... But the trouble with these arguments is that they are addressed to the wrong forum. Conditions may have changed, but the statute has not.
 
 
 22
 The decision of the district court is reversed and this case is remanded with instructions for the district court to dismiss the complaint.
 
 
 23
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Abraham L. Marovitz, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation
 
 
 [1]
 A qui tam action is one in which the plaintiff sues for himself and on behalf of the government to recover a penalty under a statute which provides that part of the penalty is awarded to the party bringing the suit and the remainder of the penalty is awarded to the government
 
 
 [2]
 On November 7, 1980, the United States submitted its statement to the district court declining to enter an appearance in this action. The statement reads in part:
 [T]he relator submitted the required notice to the Attorney General of the United States at Washington, D.C., and the Attorney General hereby timely files this declination. In doing so, however, the United States does not mean to imply that this action is not cognizable under the [False Claims] Act, nor that governmental interests will not be affected by its outcome. On the contrary, it is because those interests will be served by the relator's control of this action that the United States has declined to enter....
 The state is a proper relator. This litigation is the result of the investigative efforts of the State of Wisconsin. The relator brought this action upon evidence of false claims heretofore unknown to the Federal Government, and has developed a special expertise in the detection and investigation of Frauds of this type within the State of Wisconsin. Further, the relator possesses the ability, manpower and resources with which to pursue this action. Thus, the qui tam plaintiff herein is the proper party to conduct this action.
 R. at 3. As discussed below, the district court properly found that the action was based upon information which was known to the United States at the time the action was filed. Therefore, the Attorney General's decision that the State of Wisconsin is a proper relator for this action is a nullity. The Attorney General cannot confer subject matter jurisdiction upon the district court. See American Fire & Casualty Co. v. Finn, 341 U.S. 6, 16-19, 71 S.Ct. 534, 541-543, 95 L.Ed. 702 (1951).
 
 
 [3]
 In Safir v. Blackwell, 579 F.2d 742 (2d Cir.1978), cert. denied, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979), the Second Circuit noted its displeasure with the literal construction that courts consistently have given the "essential information" bar in Sec. 232(C) and intimated that an exception should be created to the statute. Nonetheless, that court chose to follow the literal approach. Safir also cites two district court opinions displeased with the literal approach. 579 F.2d at 746
 
 
 [4]
 Title 31 of the United States Code was completely recodified in 1982. Pub.L. 97-258, 96 Stat. 877 (1982). The House report that accompanied the recodification stated that Congress intended "to restate in comprehensive form, without substantive change," the previous code sections. H.R.Rep. No. 651, 97th Cong., 2d Sess. 1 (1982), reprinted in 1982 U.S.Code Cong. & Ad.News 1895. Section 232(C) was recodified, in relevant part, as 31 U.S.C. Sec. 3730(b)(4):
 Unless the Government proceeds with the action, the court shall dismiss an action brought by the person on discovering the action is based on evidence or information the Government had when the action was brought.
 The unambiguous language of the recodification further supports our holding that the exception that the district court found was incorrect. Cf. Shapiro v. United States, 335 U.S. 1, 16, 68 S.Ct. 1375, 1383, 92 L.Ed. 1787 (1948) ("In adopting the language used in the earlier act, Congress 'must be considered to have adopted also the construction given by this Court to such language, and made it a part of the Enactment.' ").