**MAKRO CAPITAL OF AMERICA, INC., Plaintiff,**

v.

**UBS AG, et al., Defendants.**

No. 04–21917–CIV.

United States District Court,
S.D. Florida,
Miami Division.

June 29, 2006.

Gregory J. Trask and Peter W. Homer, Homer Bonner, P.A., Miami, FL, James Weidner and Thomas Teige Carroll, Clifford Chance U.S. LLP, New York, NY, for defendant UBS AG.

Steve I. Silverman and Abbey L. Kaplan, Kluger, Peretz, Kaplan & Berlin, Miami, FL, for plaintiff Makro Capital of America, Inc.

## AMENDED ORDER [1]

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendant, UBS AG's ("UBS['s]") Motion to Dismiss the Amended Complaint [D.E. 79], filed on April 19, 2006. The dispute centers upon a chain of historical events dating back to the 1920s. The Court has carefully considered the parties' written submissions and all applicable law.

## I. BACKGROUND

Plaintiff, Makro Capital of America, Inc. ("Makro"), filed its initial Complaint against UBS on July 29, 2004 [D.E. 1]. The Complaint named UBS (and its predecessors in interest) and the United States of America ("United States") as Defendants.

The actions giving rise to the Complaint began prior to World War II when a German company, I.G. Farben ("Farben"), founded I.G. Chemie ("Chemie"), a Swiss company, in 1928. (*See Amended Complaint* [D.E. 61] ¶ 21). Chemie, in turn, acquired numerous U.S. assets, which were primarily under the control of a U.S. holding company named General Aniline and Film Corporation ("GAF").[2] (*Id.* at ¶ 23). In 1942,[3] the United States seized GAF's assets, along with Chemie's other U.S. assets, under the Trading with the Enemy Act, claiming that the assets belonged to Farben, a German company and, hence, an enemy combatant. (*See Id.* at ¶¶ 2, 4).

Following World War II, however, Chemie (which had since been renamed Internationale Industrie-und Handelsbeteiligungen AG ("interhandel")) sought the return of its assets. (*Am. Comp.* ¶ 33). It claimed that the assets had been wrongfully seized, as it had broken ties with Farben by 1940 and was an autonomous Swiss company. (*See Id.* at ¶ 34). Chemie/Interhandel therefore argued that it had been erroneously classified by the United States as an enemy combatant. Makro claims that the split was a farce initiated to create the appearance that Farben and Chemie were separate entities when, in reality, Farben controlled Chemie/Interhandel. (*Id.* at ¶ 30).

Chemie/Interhandel initiated litigation in the United States in 1948, seeking the return of its assets. After 15 years of litigation Chemie/Interhandel reached a

---

1. The Court's June 28, 2006 Order [D.E. 106] contained a printing error. The substance of the two orders is identical.

2. It is unclear whether GAF was initially formed as a subsidiary of either Farben or Chemic. At the time of Farben's ostensible split with Chemie (the event bearing significantly upon Makro's claim), however, Makro alleges that GAF was under the direct control of Chemic. (*See Am. Comp.* ¶ 26).

3. The Amended Complaint later states that the United States seized the GAF assets "[o]n or before February 15, 1943." (*Am. Comp.* ¶ 32). The precise date of seizure is not pertinent to resolution of UBS's Motion.

settlement agreement with the United States in 1963 (the agreement was approved by a district court in 1964). (*Am. Comp.* ¶ 42). The settlement netted the company approximately $122 million. (*Id.* at ¶ 43). Shortly after the settlement, Chemie/Interhandel merged with UBS, and UBS gained control of the settlement proceeds. (*Id.* at ¶ 4).

On July 29, 2004, Makro filed a Complaint against UBS and the United States claiming that it had "legal, contractual, and cognizable rights" to make claims on behalf of itself, Farben, Farben's trustees, and other Farben shareholders. (*Complaint* ¶ 26.) The Complaint asserted the following five causes of action against UBS: (1) accounting; (2) imposition of constructive trust; (3) fraud; (4) misrepresentation; and (5) spoliation of evidence. Makro brought a claim for unjust enrichment and a claim seeking the release of documents against the United States.

Plaintiff's initial Complaint was dismissed in an order dated May 18, 2005. *See Makro Capital of America, Inc. v. UBS AG*, 372 F.Supp.2d 623 (S.D.Fla. 2005). In the May 18, 2005 Order, the undersigned held as follows:

> In this case, the Complaint contains no allegation that any individual Holocaust victim has transferred a chose in action to Makro or that Makro otherwise has legal rights to bring actions on behalf of Holocaust victims or their survivors. Rather, Makro has alleged that it has "legal, contractual, and cognizable rights" to make claims on behalf of itself, Farben, Farben's trustees, and other Farben shareholders. These claims, as discussed above, are barred from re-

covery under § 39 of the Trading with the Enemy Act.

> Finally, the fact that Makro seeks to prove with its newly discovered evidence-that I.G. Chemie was not an independent Swiss company after 1940 but rather an alter ego of Farben, a Nazi collaborator-is essentially the same conclusion that the U.S. government reached in 1942 and 1943 when it seized I.G. Chemie's assets. It is also the same issue that Interhandel and the U.S. government litigated for almost 20 years between 1948 and 1966. Farben was denied leave to intervene in that litigation in 1958, and Makro alleges no facts now demonstrating that it has a right, on behalf of Farben or Farben's shareholders or trustees, to disrupt the settlement reached by the United States and Interhandel in 1963.

*Id.* at 628. The Court granted Makro leave to amend its Complaint so that it could re-plead its claim as a *qui tam*[4] action. *Id.*

Makro's Amended Complaint [D.E. 61], which was filed under seal[5] on June 27, 2005, arises from the same general facts underlying Makro's original Complaint. However, in accordance with the Court's instructions in the May 18, 2005 Order, the claim was prosecuted as a *qui tam* action on behalf of the United States pursuant to 31 U.S.C. § 3730. The Amended Complaint alleges that UBS (and its predecessors in interest) violated the False Claims Act, 31 U.S.C. § 3729. Specifically, Makro claims that UBS sought to recover the assets seized by the United States by concealing the true nature of the relationship

---

4. *Qui tam* is derived from the Latin expression *"qui tam pro domino rege quam pro se ipso in had parte sequitur,"* meaning "who as well for the king as for himself sues in this matter." *Black's Law Dictionary* 1282 (8th ed.2004).

5. Pursuant to 31 U.S.C. § 3730(b)(2), all *qui tam* actions must be filed under seal.

that existed between Farben and Chemie/Interhandel throughout World War II.

Before Makro filed its Amended Complaint (and while its initial Complaint was still pending), Dr. Ludwig Koch filed an action against UBS under the False Claims Act in the Eastern District of New York. The New York action (No. 05–CV–1518) was filed under seal on March 28, 2005 (approximately three months before Makro filed its Amended Complaint)[6] and is indisputably based upon the same factual predicate as is Makro's suit. Dr. Koch sought to intervene in order to have this action transferred to New York; a request that was denied in this Court's May 24, 2006 Order [D.E. 100].

UBS's present Motion seeks to dismiss the Amended Complaint. UBS claims that the Court lacks subject matter jurisdiction because (1) another *qui tam* action based on the same underlying facts was filed prior to this action; and (2) the United States had evidence and/or information relating to the false claims prior to Makro's filing of the *qui tam* action.

## II. *ANALYSIS*

### A. Legal Standard

■ A party may seek to dismiss a claim for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Indeed, even if neither party raises the issue, a court should raise the question of its jurisdiction *sua sponte* whenever the matter is in doubt. *See, e.g., Fitzgerald v. Seaboard System R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir.1985) (citations omitted)("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). Makro, the party invoking the Court's jurisdic-

tion, bears the burden of demonstrating that this matter falls within the Court's subject matter jurisdiction. *Commodity Futures Trading Com'n v. G7 Advisory Services, LLC*, 406 F.Supp.2d 1289, 1291 (S.D.Fla.2005) (citations omitted). In short, "a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

■ An attack on subject matter jurisdiction may be either facial or factual. *G7 Advisory Services*, 406 F.Supp.2d at 1292 (citation omitted). "Facial attacks on the complaint require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir.1990)(quotations, citations omitted). Conversely, factual attacks on jurisdiction challenge the existence of jurisdiction in fact, regardless of the pleadings. *See Id.* at 1529. Where, as here, a defendant presents a factual attack on a court's subject matter jurisdiction "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (citation omitted).

### B. Effect of Amendments

■ As noted, UBS argues that the Court lacks jurisdiction to adjudicate Makro's claims. The Court's inquiry is complicated because, in the lengthy time span

---

6. Because both actions were filed under seal, it does not appear that either of the plaintiffs became aware of the other action until, at the very earliest, Makro's Amended Complaint was unsealed by the Court's order dated March 2, 2006 [D.E. 71]. The New York court lifted the seal on April 5, 2006.

between UBS's alleged acts of concealment and the filing of this suit. Congress amended the jurisdictional provisions relevant to Makro's claim. The amendments bear upon each of UBS's arguments.

In 1986 Congress added a provision stating that "[w]hen a person brings [a *qui tam* action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). Additionally, Congress eliminated the provision in earlier versions of the statute requiring courts to "dismiss [a *qui tam*] action ... based on evidence or information the Government had when the action was brought."[7] 31 U.S.C. § 3730(b)(4) (1982 ed.).[8]

UBS contends that both of the above provisions apply to this action. In its Response Memorandum [D.E. 97] Makro did not argue that the provisions were inapplicable, but instead contested UBS's claim that their application should result in dismissal of its claim. At oral argument, however, Makro argued that 31 U.S.C. § 3730(b)(5) should not apply because UBS's actions occurred long before the provision became effective. Makro, however, does not contest the applicability of 31 U.S.C. § 3730(b)(4) (1982 ed.), notwithstanding the fact that the provision was repealed in 1986.

In *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), the Supreme Court addressed whether the 1986 amendments should be applied retroactively. It ultimately held that the 1986 amendment re-

pealing the bar to suits based upon information in the Government's possession should not be applied retroactively. *Id.* at 952–53, 117 S.Ct. 1871. Thus, it found that the district court should have dismissed the action as the parties had conceded that the Government possessed the pertinent information prior to the suit, notwithstanding the fact that the suit was brought after the relevant provision was repealed. Importantly, however, the Court noted that "[b]ecause both the allegedly false claim submission and the disclosure to the Government of information about that submission occurred prior to the effective date of the 1986 amendments, we need not address which of these two events constitutes the relevant conduct for purposes of our retroactivity analysis." *Id.* at 946 n. 4, 117 S.Ct. 1871.

In contrast to *Hughes*, here the claim is that the United States became aware of the grounds for Makro's claim in 2005 (upon Makro's filing of its initial Complaint), after the effective date of the 1986 amendment. Thus, the Court is required to answer the question left unresolved by the Supreme Court in *Hughes;* namely, what is the relevant conduct for purposes of the retroactivity analysis. The Third and Ninth Circuits have addressed the question and each has held that it was the making of the false claim, not the date the United States came into possession of the relevant evidence/information, that was the relevant event for purposes of the retroactivity analysis. *See U.S. ex rel. Cantekin v. University of Pittsburgh*, 192 F.3d 402, 411 (3d Cir.1999)("we conclude that we

---

7. At the time of UBS's alleged false claim, the relevant statutory provision was codified as 31 U.S.C. § 232(C). In 1982, the relevant language of the provision was recodified as 31 U.S.C. § 3730(b)(4). The substance of the provision, however, remained unchanged. This Order refers to the provision as 31 U.S.C. § 3730(b)(4) (repealed).

8. The "government knowledge" jurisdictional bar was replaced with a "public disclosure" bar. *See* 31 U.S.C. § 3730(c)(4)(A) (2000); *U.S. ex rel. Laird v. Lockheed Martin Engineering and Science Services Co.*, 336 F.3d 346, 351 (5th Cir.2003) (citation omitted).

should use the date the claim was submitted for determining the retroactivity of the Grassley Amendment's 'public disclosure' bar to *qui tam* suits"); *U.S. v. Hughes Aircraft Co.*, 162 F.3d 1027, 1031 (9th Cir. 1998)("We conclude that the crucial event for purposes of non-retroactivity is the alleged presentation by Hughes of a false claim, and not the public disclosure of that conduct"); *see also U.S. ex rel. Grynberg v. Praxair, Inc.*, 207 F.Supp.2d 1163, 1181 (D.Colo.2001) *rev'd, in part, on other grounds*, 389 F.3d 1038 (10th Cir. 2004)(same). The undersigned adopts the Third and Ninth Circuits' persuasive reasoning, as Makro has not provided any justification to adopt an alternative holding.[9]

Because the Court finds that application of 31 U.S.C. § 3730(b)(4) (repealed) requires dismissal of Makro's claim, UBS's alternative argument that the claim should be dismissed under 31 U.S.C. § 3730(b)(5) is not addressed.

### C. The Government Had Information/Evidence in its Possession When Makro Filed its *Qui Tam* Action.

UBS argues that Makro's initial Complaint, the papers filed by Makro in support of its initial Complaint. and Dr. Koch's New York action provided the government with the evidence and/or information underlying Makro's suit. Makro nevertheless maintains that dismissal is inappropriate because (1) the prior suits (and presumably the related filings) are not the type of "evidence or information" contemplated by the statute; (2) the government did not have the requisite evidence or information in its possession when Makro filed its *initial Complaint;* and (3) resolution of the matter requires the Court to consider facts outside the

scope of the pleadings, an analysis that is impermissible on a motion to dismiss. None of Makro's arguments persuades.

1. *Overview of the 31 U.S.C. § 3730(b)(4)(repealed) Standard*

As stated, a court must dismiss a *qui tam* action if it is "based on evidence or information the Government had when the action was brought." 31 U.S.C. § 3730(b)(4) (repealed). Courts have interpreted the provision to apply even when the relevant information "was obtained by the relator through substantial independent effort and provided to the government in anticipation of the suit." *U.S. v. Catholic Healthcare West*, 445 F.3d 1147, 1154 (9th Cir.2006)(citing *United States ex rel. Wisconsin v. Dean*, 729 F.2d 1100 (7th Cir.1984)); *see also U.S. ex rel. Anderson v. Northern Telecom, Inc.*, 52 F.3d 810 (9th Cir.1995) (citation omitted)(same).

Several courts have described the type of evidence and/or information that properly precludes the filing of a *qui tam* action. The Ninth Circuit aptly described the standard as follows:

> To require that the evidence and information possessed by the United States be a mirror image of that in the hands of the *qui tam* plaintiff would virtually eliminate the bar. On the other hand, to permit the bar to be invoked when the United States possesses only rumors while the *qui tam* plaintiff has evidence and information would be to permit the bar to repeal effectively much of the False Claims Act. Between these extremes lies the answer.

> More precisely, the answer rests in that area where it is possible to say that the evidence and information in possession of the United States at the time the

---

**9.** Indeed, Makro accepts UBS's contention that *Hughes* settled the matter and does not

even address the issue of the conduct that is relevant to the retroactivity analysis.

False Claims Act suit was brought was sufficient to enable it adequately to investigate the case and to make a decision whether to prosecute. Obviously to refer to an "area" rather than a "point" lacks definiteness: but prudence requires this sacrifice. Each case requires careful analysis not likely to be aided by asserting that the evidence and information sufficient to invoke the bar must be "substantial," "essential," or "significant".

*Pettis ex rel. U.S. v. Morrison–Knudsen Co., Inc.,* 577 F.2d 668, 674 (9th Cir.1978). Likewise, relying extensively upon the reasoning in *Pettis,* the Seventh Circuit held that a *qui tam* suit was barred "whenever the government has knowledge of the 'essential information upon which the suit is predicated' before the suit is filed." *Dean,* 729 F.2d at 1103 (citation omitted).

Most importantly, the Fifth Circuit, in a decision that is binding upon the Court, held as follows:

> The jurisdictional bar of 31 U.S.C. § 232(C) operates to preclude an informer's suit under the False Claims Act when "the essential information upon which the suit was predicated was in the possession of the United States prior to the filing of the suit." ... Knowledge by the Government prior to suit bars the action even if the plaintiff is the source of that knowledge.... We reject Weinberger's assertion that the district court had jurisdiction of the suit because his pre-suit disclosures to the Government did not include one or two items of information which he sought to use as support for his claim. We agree with the Ninth Circuit that the evidence or information possessed by the United States need not be a "mirror image" of that in the hands of the *qui tam* plaintiff, and that the jurisdictional bar is properly invoked where it is possible to say that the evidence and information in possession of the United States at the

time the False Claims Act suit was brought was sufficient to enable it adequately to investigate the case and to make a decision whether to prosecute.

*U.S. ex rel. Weinberger v. State of Fla.,* 615 F.2d 1370, 1371 (5th Cir.1980)(internal quotations, citations omitted).

### 2. *Evidence/Information in Government's Possession*

Prior to the filing of Makro's *qui tam* action, the United States was unquestionably in receipt of the following documents:

(1) Makro's 44–page Complaint detailing the relationship between Farben and Chemie and further outlining the fraud that UBS's predecessors in interest had allegedly perpetrated;

(2) Makro's memorandum in response to UBS's motion to dismiss Makro's original Complaint, directing "the Court to the recently declassified so-called 'Rees Report,' one of the major documents which substantiate this action." (*Makro's Opp. Mem.* [D.E. 46] at 13); and

(3) Dr. Koch's 46–page complaint, filed on March 28, 2005, setting forth UBS's alleged fraud in great detail and also referencing the "Rees Report." (*See Memo. in Support of Koch's Motion to Intervene* [D.E. 77], Ex. B).

Makro argues that "[a] complaint is not evidence. A mere pleading is not the type of 'evidence or knowledge' in the Government's possession to trigger dismissal under § 232(c); and UBS has not cited a case saying so." (*Makro's Response Memo.* at 12). Makro is mistaken.

█ Contrary to Makro's assertion, the statute does not speak of "evidence or knowledge," but rather requires dismissal if a complaint is based upon "evidence or *information*" possessed by the government. *See* 31 U.S.C. § 3730(b)(4) (re-

pealed)(emphasis added). The documents/allegations in the United States' possession, whether or not characterized as "evidence," were certainly "sufficient to enable it [the United States] adequately to investigate the case and to make a decision whether to prosecute." *Weinberger*, 615 F.2d at 1371. There is no support in the statute for Makro's position that lawsuits, or filings therein, may not be the source of the government's information. To the contrary, "the jurisdictional bar of section 232(C) is 'broad enough to cover information obtained by the government from any source whatever.'" *Dean*, 729 F.2d at 1105 (quoting *United States v. Aster*, 176 F.Supp. 208, 209 (E.D.Pa.1959), *aff'd*, 275 F.2d 281 (3d Cir.), *cert. denied sub nom. Aloff v. Aster*, 364 U.S. 894, 81 S.Ct. 223, 5 L.Ed.2d 188 (1960)).

Makro's reliance on the Supreme Court's holding in *Hughes* in support of its argument is misplaced. Makro argues that in *Hughes*, "the Supreme Court found that the Government itself had discovered the fraud through documents and its own forensic audits of the defendant." (*Makro's Response Memo.* at 11–12). In actuality, the *Hughes* Court stated that "[t]he Ninth Circuit accepted, and respondent does not dispute, that because the government was aware of [respondent's] allegations before he filed his suit, the [1982 provision] would bar his claim, were it applicable." *Hughes*, 520 U.S. at 945, 117 S.Ct. 1871 (citation omitted). Thus, the Court expressed no opinion as to the types of sources that may provide the government with information pertaining to a particular claim as contemplated by 31 U.S.C. § 3730(b)(4) (repealed).

Moreover, while Makro correctly notes that, in *Hughes*, the government had previously conducted an audit, the audit ultimately concluded that the defendant *had not submitted false claims. See Id.* at 943

n. 1, 117 S.Ct. 1871. Instead, the government's "knowledge" appears not to have derived from the "evidence" obtained through the audit, but from "[respondent's] *allegations.*" *Id.* at 945, 117 S.Ct. 1871 (emphasis added). If anything, the holding in *Hughes* undermines Makro's argument.

Makro also notes that, in a *qui tam* action, a copy of the *qui tam* complaint and all material evidence must be served upon the government. *See* 31 U.S.C. § 3730(b)(2). Makro apparently argues that because a relator in a *qui tam* suit must serve the complaint and provide material evidence to the government, a complaint alone can never place the government on notice of a relator's claim. To the extent that Makro argues that the filing of a *qui tam* complaint and serving it on the government may not serve as the basis for dismissal, the undersigned agrees. Indeed, a contrary holding would have precluded courts from ever exercising jurisdiction over *qui tam* actions under the prior statutory scheme.

Here, however, Makro's initial Complaint was not filed as a *qui tam* action.[10] Quite to the contrary, the Complaint asserted claims against the United States, not on its behalf. The fact that a plaintiff needs to provide the additional material evidence (in addition to the complaint) so that the government may determine if it wishes to intervene *in a qui tam action* in no way suggests that an independent complaint, *where the government is named as a defendant,* is incapable of providing the government with "evidence or information."

### 3. *Relation Back*

 Makro also argues that because its *qui tam* action is "based on the same

---

**10.** A far different question would be presented if it had been.

conduct, transactions, and occurrences contained in" its initial Complaint, the Court should consider the government's knowledge at the time of the filing of Makro's initial Complaint, as opposed to its knowledge when Makro filed its *qui tam* complaint. Makro apparently views subject matter jurisdiction as a shifting concept whereby if a court has subject matter jurisdiction over a particular cause of action at a particular point in time, it may properly exercise jurisdiction over all related causes of action, whenever and however they are filed.

Makro, however, provides no support for its extraordinary proposition. As stated, the statute clearly provided that a court "shall have no jurisdiction to proceed with any [*qui tam* action] whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the" government. 31 U.S.C. § 3730(b)(4) (repealed). The United States clearly had relevant information at *the time that Makro filed its qui tam suit.* The Eleventh Circuit has mandated that "federal courts [ ] proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction." *Smith v. GTE Corp.,* 236 F.3d at 1299 (quoting *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 409 (11th Cir.1999)). Given federal courts' need to narrowly construe their jurisdiction, and in the absence of any compelling argument in favor of exercising jurisdiction from Makro, the Court may not exercise jurisdiction over Makro's claim.

#### 4. *Resolution is Appropriate on a Motion to Dismiss.*

Makro further argues that the Court's subject matter jurisdiction inquiry requires the Court to consider facts extraneous to the pleadings. That is most assuredly true. As stated, when a party presents a factual attack to a court's juris-

diction, a "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Dunbar,* 919 F.2d at 1529.

■ Moreover, the Eleventh Circuit has held that a court may take judicial notice of the public record on a motion to dismiss without converting the motion to a motion for summary judgment. *See Universal Express, Inc. v. U.S. S.E.C.,* No. 04–20481–CV–AJ, 2006 WL 1004381, at *1 (11th Cir.2006)("[p]ublic records are among the permissible facts that a district court may consider" on a motion to dismiss) (citation omitted); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271 (11th Cir.1999)(holding that district courts may properly take judicial notice of public securities filings). Documents filed with this or other courts certainly constitute "public records." Thus, the Court has the power to consider the court filings, even if she were considering UBS's motion under the more exacting 12(b)(6) standard.

#### 5. *Tension Between Pleadings*

Although not strictly relevant to resolution of UBS's Motion, the undersigned writes further to point out the fundamental tension between Makro's two pleadings.

In its initial Complaint, Makro alleged that the United States "was and is in possession of certain documents necessary to claims that Plaintiff ... [has] for the return of assets that originally belonged to IG Farben." (*Comp.* ¶ 94). Makro further alleged that "the U.S. maintained extensive records, reports, memoranda, classified materials and other documents ... related to the activities of IG Farben and its ... companies in Germany, Switzerland and the United States." (*Id.* at ¶ 95). Makro asserted a "for documents" cause of action against the United States, alleging that it had wrongfully failed to disclose the inculpatory evidence against UBS result-

ing from the United States' "extensive" investigatory activities. (*See id.* at ¶¶ 96–101).

In its present *qui tam* action, Makro sues *on behalf of the United States.* Moreover, in stark contrast to its initial Complaint, Makro now argues that the United States was in fact duped by UBS's predecessors and that Makro, as opposed to the government, is the party that has uncovered evidence and/or information relevant to the fraud. While the undersigned does not suggest that a plaintiff's theory of the case must remain constant throughout time, Makro's diametrically opposed positions, predicated on the same set of facts, cast doubt upon the existence of a good-faith basis for Makro's allegations. *See* Fed.R.Civ.P. 11.

### III. *CONCLUSION*

Makro seems primarily concerned by the fact that 31 U.S.C. § 3730(b)(4) (repealed) creates incentives that are not aligned with the general purpose of the False Claims Act and *qui tam* provisions. While it may be a cold comfort to Makro, Congress has implicitly agreed with its criticism. Courts have widely recognized that the 1986 amendments were enacted, in part, because Congress wanted to change a regime where "a Government official who is deemed to 'have' the information may not recognize the connection between the information and a particular false claim." *Cantekin,* 192 F.3d at 408. Moreover, in passing the 1986 amendments, "Congress was mindful of the need 'to encourage persons with firsthand knowledge of fraudulent misconduct to report fraud.'" *U.S. ex rel. Dunleavy v. County of Delaware,* 123 F.3d 734, 740 (3d Cir.1997)(quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. The Prudential Ins. Co.,* 944 F.2d 1149, 1154 (3d Cir.1991)).

However, as noted, the Supreme Court has mandated that courts apply the law in effect at the time that UBS made its allegedly false claims, however flawed that law may have been. Thus, the policy considerations underlying Makro's arguments and/or the 1986 amendments are not relevant to the Court's analysis.

Accordingly, and for the reasons stated above, it is

**ORDERED AND ADJUDGED** that UBS's Motion to Dismiss the Amended Complaint [D.E. 79] is **GRANTED.** The Clerk of the Court is instructed to **CLOSE** the case and all pending motions are **DENIED AS MOOT.**