# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-2744

BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES,
RUFILIO G. HERRERA, JOSEPH M. FRANCO, et al.,

*Plaintiffs-Appellees,*

*v.*

CSX TRANSPORTATION, INCORPORATED, BURLINGTON
NORTHERN AND SANTA FE RAILWAY COMPANY,
UNION PACIFIC RAILROAD COMPANY, et al.,

*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 9419—**Wayne R. Andersen**, *Judge.*

---

ARGUED JANUARY 3, 2007—DECIDED MARCH 2, 2007

---

Before KANNE, ROVNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* A dozen unions[1] contend that five

---

[1] Appellee unions are: American Train Dispatchers Association
(ATDA); Brotherhood of Locomotive Engineers and Trainmen
(BLET); Brotherhood of Maintenance of Way Employees
(BMWE); Brotherhood of Railway Signalmen (BRS); Interna-
tional Association of Machinists and Aerospace Workers (IAM);
International Brotherhood of Electrical Workers (IBEW);
(continued...)

railroad carriers[2] have violated collective bargaining rights in their interpretation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* Cases involving this controversy, filed in various federal courts,[3] were consolidated in the Northern District of Illinois, where a declaratory judgment was entered that if a collective bargaining agreement (CBA) grants employees the right to determine when or how they use paid vacation or personal leave, those provisions prevent the railroads from substituting contractual leave for leave under the FMLA. The railroads have appealed, contending that the FMLA gives them explicit authority to require substitution. Our

---

[1] (...continued)
National Conference of Firemen and Oilers (NCFO); Sheet Metal Workers International Association (SMWIA); Transport Workers Union (TWU); Transportation Communications International Union (TCU); United Supervisors Council of America (USCA); and United Transportation Union (UTU). Also included are the individual appellees who are union members.

[2] Appellant carriers are: The Burlington Northern and Santa Fe Railway Company (BNSF); CSX Transportation, Inc. (CSXT); Indiana Harbor Belt Railroad Company (IHB); Norfolk Southern Railway Company (NSR); and Union Pacific Railroad Company (UP).

[3] In response to the contention of the unions that the policy of the carriers should not be permitted, CSXT filed a civil action in the Middle District of Florida and UP filed an action in the Northern District of Texas. At about the same time, several unions filed related actions in the Northern District of Illinois against BNSF, CSXT, UP, and IHB (NSR was added as a defendant later). The parties agreed to the consolidation of all the cases in the Northern District of Illinois for purposes of summary judgment. As did the district court and the parties, we will focus our discussion on the important principle at stake, rather than the intricate differences between various collective bargaining agreements.

review is *de novo. Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416 (7th Cir. 2004).

There is no question that the carriers are subject to the FMLA as well as the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* Also, the carriers and the various unions are parties to a number of CBAs, including both national and local agreements. As relevant here, the CBAs were adopted before 1993 when the FMLA was enacted. The CBAs provide four basic types of leave: paid vacation leave, paid sick leave, paid personal leave, and unpaid leaves of absence. Paid vacation leave is governed by a National Vacation Agreement (NVA), dating back to the 1940s. The NVA provides that employees can schedule vacations in advance, based on seniority rights and preferences when consistent with the needs of the carrier's service. Some employees are also entitled to paid personal days under some of the CBAs, which prescribe the amount of leave, the procedures for requesting leave, and how the leave is allotted. Personal days may be used for any purpose. Generally, however, an employee seeking to take personal leave must submit a request to do so at least 48 hours in advance. Although there is no national agreement regarding sick leave, some carriers provide paid sick leave through local CBAs. In the usual case, employees are provided with a certain number of sick leave days based on position and seniority; sick leave may be used only for the employee's own illness or injury, and obviously there is no requirement for an advance request for sick leave.[4]

---

[4] The district court decision did not specifically cover sick leave, and here, the parties' arguments are not germane to sick leave, the timing of which is not governed by seniority—though the number of days may be. Also, the arguments in this case are

(continued...)

The FMLA guarantees eligible employees up to 12 weeks of unpaid leave during a 1-year period (1) for the birth of a child, (2) for the placement of a child with the employee for adoption or foster care, (3) to care for a spouse, son, daughter, or parent with a serious health condition, and (4) for a serious health condition of the employee. In addition to a block of leave time, leave must be granted on either an intermittent or part-time basis when necessary. During the 12-week period, the employer must maintain the employee's group health coverage. Upon the timely return to work, the employee must be reinstated to his or her former position or an equivalent. Pursuant to congressional directive, the Department of Labor has issued regulations implementing the FMLA. 29 U.S.C. § 2654; 29 C.F.R. §§ 825.100 *et seq.* The regulations require that employers have written policies regarding the use of FMLA leave, including how the right to take leave can be exercised.

In recent years, the carrier-appellants in this case have revised their policies to require in some circumstances that employees use paid leave concurrently with unpaid FMLA leave. The policies are attempts to avoid "stacking"—that is, exercising the right to contractual paid leave on top of FMLA leave.

Certain characteristics are common to all the carriers' policies. First, all require employees to use accrued paid leave when the employee exercises the right to intermittent leave for his or her own serious health condition, or either intermittent or block leave to care for a family member, or for the birth or placement of a child. But no carrier requires an employee to use paid vacation leave when taking a block FMLA leave for his or her own serious

---

[4] (...continued)

based primarily on national, not local agreements. For these reasons, our opinion is not intended to apply to sick leave.

health condition. The policies also allow an employee to elect which form of paid leave to use in connection with FMLA leave. If the employee does not choose, the carrier will assign paid leave in the following order: sick leave (if available), personal days, and vacation.

The substitution policies apply only if an employee is taking leave that can be designated as FMLA leave. If the employee specifically requests FMLA leave, the substitution policy applies. Some carriers will require substitution of paid leave regardless of whether the employee has requested FMLA leave, assuming that the leave qualifies under the FMLA. The unions contend that these policies are invalid; the carriers disagree.

As a general principle, the FMLA authorizes substitution of paid leave for FMLA leave. Paid vacation, personal leave, or family leave can be substituted for FMLA leave for the birth of a child, placement of a child in the family, or to care for a spouse. In addition, medical or sick leave as well as vacation and personal leave can be substituted for FMLA leave based on a health condition of the employee. Substitution can be done at the employee's election, or the employer may require it. 29 U.S.C. § 2612(d)(2)(A) and (B).

But there are restrictions on the general principle that the employer may require substitution. Title 29 U.S.C. § 2652(a) sets out such a restriction. That section provides that nothing in the FMLA

> shall be construed to diminish the obligation of an employer to comply with any collective bargaining agreement or any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established under this Act . . . .

Before moving deeper into this dispute, we note one point: we cannot find that this section controls the pres-

ent case. There is nothing in the CBAs which provides "greater family or medical leave rights" to the employees.

However, the heart of this case is the unions' contention that another restriction exists: they contend that substitution constitutes a unilateral change in the CBAs (and the NVAs) and is therefore prohibited by the Railway Labor Act. The latter Act provides:

> No carrier, its officers or agents shall change the rates of pay, rules, or working conditions of its employees, as a class as embodied in agreements except in the manner prescribed in such agreements . . . .

45 U.S.C. § 152 Seventh.

As we see it, the essence of this case involves the intersection of the FMLA, which in some cases allows substitution of paid leave for FMLA leave; the RLA, which prohibits an employer from unilaterally changing working conditions except by following certain procedures; and the CBAs and the NVAs that set out with some care how vacation time is awarded. The issue is whether they can be reconciled.

The carriers say that the FMLA and the RLA can be reconciled. But they also say that to the extent that there is conflict, the FMLA, being the newer and, in their view, the more specific Act, trumps the RLA and controls the situation, thus giving the carriers authority to unilaterally institute its anti-stacking policies.

The argument could bring us into the esoteric realm of implied repeal or implied amendment of statutes. The carriers see § 2612(d) as a limited exception to the requirements of the RLA; in other words, that it is an implied amendment. We disagree. In looking at two statutes which might be said to deal with the same subject matter, we must apply certain principles. A specific statute takes precedence over a more general statute, and a later enacted statute may limit the scope of an earlier statute.

*In re Johnson*, 787 F.2d 1179 (7th Cir. 1986). As to the two statutes involved in the present case, the FMLA is the more recent statute, but whether it is more specific depends on how you look at it. It covers a more specific subject matter—family leave—but its application is far wider than the RLA. Additionally, the RLA grows out of specific needs of the railway industry (and later the airline industry) and from that perspective is more specific. Asking which is more specific is a little like asking whether an avocado is more specific than a kiwi.

And, more importantly, implied amendments to statutes—like implied repeals—are not easily found. *See Branch v. Smith*, 538 U.S. 254 (2003); *United States ex rel. State of Wis. v. Dean*, 729 F.2d 1100 (7th Cir. 1984). We are often reminded that "when two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976). We reject the notion that § 2612 is an implied exception to the RLA. Furthermore, we are not convinced that the Acts are incapable of reconciliation.

Section 152 Seventh of the RLA tells railroads what they must not do—change working conditions except in the manner dictated by the agreements or in § 156, which requires notice, a conference, and, in some cases, mediation. Section 2612 of the FMLA simply tells employers what they may do—require substitution—not what they must do. A reasonable conclusion is that, while substitution is allowed, the carriers cannot require substitution without complying with procedures set out in the RLA. Using those procedures, the carriers can bargain for substitution provisions.[5]

---

[5] There is a limitation in the FMLA, however, on what the carriers can bargain for. Section 2652(b) prohibits bargaining
(continued...)

Bargaining seems appropriate, in part, simply because § 2612 is not a prohibition or a requirement. All it does is make clear that substitution is not forbidden. It contrasts with statutes which are prohibitions of, for instance, discrimination as is Title VII (42 U.S.C. §§ 2000e *et seq.*) or the ADA (42 U.S.C. §§ 12101 *et seq.*). In other words, § 2612 does not prohibit disapproved behavior. And even if it did, it might not in all cases take precedence over CBAs. For instance, sometimes a seniority system in a CBA does not automatically give way even under anti-discrimination statutes. In *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), the Court determined that the employer was not required to carve out an exception to its seniority system to allow an employee to meet his religious obligations. In *Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041 (7th Cir. 1996), we cited various cases under the Rehabilitation Act and the ADA supporting a conclusion that a measure that violates a seniority system established in a collective bargaining agreement is not a "reasonable accommodation," and thus is not required by the ADA. *See also Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1114 (8th Cir. 1995) ("The ADA does not require that Northwest take action inconsistent with the contractual rights of other workers under a collective bargaining agreement . . . .") It is not unusual for statutory provisions to be reconciled with seniority provisions in CBAs.

One thing on which we believe the unions and the carriers would agree is that railroads have special characteristics. There are unique problems in running a railroad and in working for one, especially on long-distance runs.

---

[5] (...continued)
for diminished rights. In other words, the FMLA is a minimum requirement.

Employees must start on time or they miss the train. Managing a work force in such a circumstance has its own difficulties, and the carriers contend that intermittent family leave causes them particular problems. On the other hand, working conditions pose problems for the workers. For instance, some workers are "on call," meaning they have no regularly set days off and may be called to duty at any time consistent with federal laws regarding maximum hours and minimum rest time. These circumstances may explain both why workers cherish their vacations and why carriers struggle with ensuring an available work force. The circumstances may also explain why, for almost 70 years, the two sides have operated under elaborate National Vacation Agreements with supplemental agreements specific to various carriers.

The National Vacation Agreement, dated December 17, 1941, provides that vacations are given "to the desires and preferences of the employees in seniority order when fixing the dates for their vacations." Many carriers remain subject to this agreement. Others are subject to a National Vacation Agreement, dated July 1, 1949, which also provides for seniority in preferences for the timing of vacations. These detailed agreements balance the needs of the carriers and the needs of the workers. In addition, groups of carriers have supplemental agreements, making a hefty addition to the record in this case. The vacation agreements are the subject of apparently hard bargaining. The right to time one's vacation and, to perhaps a slightly lesser degree, personal leave days, is a hard-won right of railroad workers.

The processes for obtaining vacations vary among the agreements but are also designed to allow the carriers the ability to run their railroads. In general, the agreements require that employees set out their time preferences for their vacations far in advance. Vacations are then awarded based on seniority and the needs of the carrier. Personal

leave days require somewhat lesser notice—48 hours in some cases—but are also subject to the needs of the carrier.

It would seem quite odd indeed to say that this elaborate process, and the decades of bargaining, can be wiped out by unilateral action on the part of the carriers, based on a statute which says they *may* require substitution, but which says nothing about the process for instituting a substitution requirement. This is especially true in the face of the RLA, which governs labor relations for the railroad industry and specifically forbids the carriers from making unilateral changes in working conditions.

We are aware that eliminating the policies against substitution may result in stacking. The carriers contend that if substitution is not allowed, employees will be able to stack FMLA leave on top of other forms of leave provided for in the contracts, greatly affecting the operation of the railroads. We understand the difficulty of having an employee out for 12 weeks of unpaid leave and then out for his or her regular vacation time. The unions point out, however, that stacking can happen even under the substitution policies the carriers have instituted. If, for instance, an employee takes his or her paid vacation early in the year, that employee will still be entitled to FMLA unpaid leave if a qualified need arises later in the year. The policy affects the employee whose vacation is later in the year and whose need for FMLA leave arises earlier in the year. That employee loses the timing of his paid vacation or personal leave. The unions also point out the carriers are not eliminating all stacking. The carriers' policies apply only to intermittent leave, not to block leave. So, some stacking remains even under the policies. We also wonder how often any employee will choose not to substitute his paid leave for unpaid leave—for remember, under § 2612, the em-

ployee can elect to substitute paid leave for FMLA leave, thus voluntarily foregoing vacation rights.

Speculation aside, we see our role as reconciling important competing principles. That is done by seeing § 2612 for what we think it is—a statement that substitution is not forbidden—but also by recognizing the important seniority rights at issue under the CBAs, rights specifically long protected by the RLA. It is not at all clear that such long-standing, statutorily protected, and important rights are abrogated by § 2612. And we find they are not. The carriers must comply with the RLA in implementing their actions under the FMLA.

In short, the FMLA does not allow the carriers to violate contractual obligations protected by the RLA regarding paid vacation and personal leave time. Accordingly, we AFFIRM the judgment of the district court.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*