[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 30, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-16162

_____

D. C. Docket No. 04-21917-CV-CMA

MAKRO CAPITAL OF AMERICA, INC.,

Plaintiff-Appellant,

UNITED STATES,

Plaintiff,

versus

UBS AG, other United States a.k.a. Union Bank of
Switzerland, a.k.a. UBS (USA) Inc., a.k.a. UBS Paine
Webber,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 30, 2008)**

Before BIRCH, PRYOR and KRAVITCH, Circuit Judges.

BIRCH, Circuit Judge:

This appeal presents the first-impression issue for our circuit of whether an amended complaint involving a qui tam claim under the False Claims Act can relate back to the original, non-qui tam, complaint under the "relation back" provisions of Federal Rule of Civil Procedure 15(c). The district court dismissed Makro's amended complaint and denied its motion for reconsideration of that dismissal. We AFFIRM both judgments.

## I. BACKGROUND

This dispute derives from a series of events dating back to the 1920s. The facts themselves are essentially undisputed by both parties. In 1928, I.G. Farben ("Farben"), a German company, created a Swiss-based offshoot, I.G. Chemie ("Chemie"). Chemie subsequently acquired various assets in the United States, including General Aniline and Film Corporation ("GAF"), a holding company. During World War II, the United States government claimed that GAF actually belonged to Farben and thus could be considered an enemy combatant. As a result, in 1942, it seized GAF and its assets under the Trading with the Enemy Act ("TWEA").

After the war, Chemie — by then renamed Interhandel — sued the United States government claiming that GAF had been wrongfully seized. Interhandel asserted that by 1940 it had broken ties with Farben and become an independent

Swiss company; thus it should not have been subject to the TWEA. After prolonged litigation, the government and Interhandel reached a settlement agreement in which the government agreed to sell GAF to the highest bidder and give Interhandel a portion of the proceeds. Shortly after this settlement, Interhandel merged with defendant-appellee UBS AG.

In 1946, the Swiss government conducted a classified investigation into the relationship between Chemie and Farben. The product of this investigation, the Rees Report, indicated that Chemie and Farben maintained close ties after 1940, contrary to Interhandel's earlier assertions. The report was declassified in 2001, at which point plaintiff-appellee Makro Capital of America ("Makro") discovered the document along with a misleading "summary" of the report prepared by Chemie. Interhandel had previously used this summary, which it knew to be false, during its settlement negotiations with the United States government.

On 29 July 2004, Makro filed a complaint against UBS and the United States in the Southern District of Florida claiming that it had the legal right to assert claims on behalf of itself, Farben, Farben's trustees, and various Farben shareholders. Makro's complaint identified five causes of action against UBS: failure to provide a full accounting of its business dealings with Chemie and Farben, imposition of a constructive trust, fraud, misrepresentation, and spoliation

3

of evidence. In addition, Makro also made two claims against the United States, one seeking the declassification and production of various documents related to Farben, Chemie, and Interhandel and the other alleging unjust enrichment due to the government's retention of its share of the assets from the sale of GAF. On the basis of these claims, Makro sought compensatory damages against both UBS and the United States.

The district court dismissed Makro's original complaint without prejudice on 18 May 2005, finding its claims barred by § 39 of the TWEA (currently codified at 50 App. U.S.C. § 39 (1990)). See Makro Capital of America, Inc. v. UBS AG, 372 F. Supp. 2d 623, 628 (S.D. Fla. 2005) ("Makro I"). It also noted that Farben had been denied leave to intervene in the United States-Interhandel negotiations in 1958 and had alleged no new facts to disrupt the settlement resulting from those negotiations. Id. However, the court granted leave for Makro to amend its complaint to attempt to state a viable qui tam claim. Id.

Makro filed its amended complaint under seal on 27 June 2005.[1] The amended complaint relied on the same basic facts as the original complaint but restyled the allegations as a qui tam action brought on behalf of the United States. In this amended complaint, Makro alleged that UBS, along with its predecessors in

---

[1] All qui tam complaints must be filed under seal and are kept under seal for at least sixty days. See 31 U.S.C. § 3730(b)(2) (2003).

4

interest, violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 (2003). It specifically claimed that UBS and its predecessors engaged in a series of fraudulent representations to the government during the United States-Interhandel negotiations. From the 1940s to the 1960s, those companies repeatedly mischaracterized the nature of the relationship between Chemie and Farben during World War II, including concealing documents from the government that would have shown such a connection. Makro asserted that this amounted to pursuit of a false claim, for which it sought damages to compensate the government for the allegedly improperly obtained settlement money.

On 28 March 2005, while Makro's original complaint was still pending, Dr. Ludwig Koch filed a qui tam action under seal against UBS under the FCA in the Eastern District of New York. All parties agree that this claim was based on the same facts as Makro's suit.[2] On 5 April 2006, the New York district court lifted the seal on Koch's action, doing so approximately a month after the Florida district court had opened up Makro's complaint. Two weeks later, UBS moved to dismiss Makro's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the district court lacked subject matter jurisdiction to hear the claim. UBS offered two rationales in support of its dismissal — that a different qui tam

---

[2] In fact, Koch attempted to intervene in Makro's qui tam action in order to have it transferred to New York. The district court rejected his motion.

action (Koch's) based on the same underlying facts had been filed prior to Makro's and that the government had evidence or information regarding UBS's allegedly false claims before Makro filed its qui tam claim.

On 28 June 2006, the district court granted UBS's motion to dismiss, focusing principally on 31 U.S.C. § 3730(b)(4) (1982) (repealed 1986), which bars courts from exercising jurisdiction over FCA claims if the government already had evidence or information pertaining to the basis for the claim at the time the suit was brought.[3] Makro Capital of America, Inc. v. UBS AG, 436 F. Supp. 2d 1342, 1347–49 (S.D. Fla. 2006) ("Makro II").  Since the government had such evidence at the time Makro filed its amended complaint, the court determined that it had no jurisdiction over Makro's qui tam claim.[4] Id. at 1350.  In addition, the court rejected Makro's argument that the amended complaint "related back" under Rule 15 to its original complaint.  Id. at 1349–50.  In so doing, it construed § 3730(b)(4) as requiring courts to assess the government's knowledge at the time of the filing

---

[3] This "government knowledge" bar was eliminated in 1986 and replaced with a "public disclosure" bar.  See 31 U.S.C. § 3730(e)(4)(A) (2003); Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 945–46, 117 S. Ct. 1871, 1875–76 (1997) (discussing amendment).  Since the relevant acts in this case took place prior to the repeal, the government knowledge bar would apply to these claims.

[4] This evidence included Makro's original complaint, Koch's complaint, and Makro's opposition to the motion to dismiss.  All of these pleadings discussed the Swiss investigation and the Rees Report.  See Makro II, 436 F. Supp. 2d at 1348.

of the qui tam claim, rather than at the earliest time at which any related claim had been filed. Id. at 1350.

In response to this dismissal, Makro filed a motion for reconsideration or rehearing. Makro asserted that the court did not fully evaluate whether and how Federal Rule of Civil Procedure 15 should apply to its claim.[5] In particular, Makro claimed that the court had jurisdiction based on Rule 15(c) and 31 U.S.C. § 3730(b)(5). Section 3730(b)(5) permits courts to exercise jurisdiction over the first privately-commenced qui tam claim filed based on a particular set of facts. If Rule 15 permitted Makro's amended complaint to relate back to the original complaint, its qui tam claim would be deemed to have been filed before Koch's and thus not be subject to this "first-to-file" bar. The district court denied the motion for reconsideration, determining that Makro had presented no evidence to support the use of Rule 15 to permit the exercise of jurisdiction over a qui tam claim that was not originally brought as a qui tam claim. See Makro Capital of America, Inc. Ex rel. United States v. UBS AG, 2006 WL 4448860 (S.D. Fla. Oct. 13, 2006) ("Makro III"). Makro subsequently appealed both the original dismissal of its

---

[5] The motion for reconsideration also asked the court to strike references in its opinion indicating that the contradictory position taken by counsel in the original complaint cast doubt on its good faith in filing the amended complaint. Since Makro's counsel had changed between the two filings, the court agreed to the emendations. This decision has not been appealed.

7

amended complaint as well as the denial of its motion for reconsideration of that dismissal.

## II. DISCUSSION

Though Makro raises a number of issues on appeal, they all essentially relate to the question of whether the district court acted properly in dismissing its amended complaint and denying its motion to reconsider that order. It asserts that the court should have applied the "relation back" doctrine of Rule 15 to its amended complaint, thus permitting the court to exercise subject matter jurisdiction despite the FCA's statutory bar. Additionally, Makro alleges that the court erred in denying its motion for reconsideration of the order dismissing its amended complaint.

A. Application of Rule 15 to Makro's Amended Complaint

A district court's dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) is reviewed de novo. See McElmurray v. Consolidated Gov't of Augusta-Richmond County, 501 F.3d 1244, 1250 (11th Cir. 2007). Attacks on subject matter jurisdiction can be either "facial" or "factual." See Morrison v. Amway Corp., 323 F.3d 920, 925 n.5 (11th Cir. 2003). Factual attacks, such as the one made by UBS, "challenge subject matter jurisdiction in fact, irrespective of the pleadings." Id. In resolving a factual attack, the district

8

court may consider extrinsic evidence such as testimony and affidavits." Id. Since such a motion implicates the fundamental question of a trial court's jurisdiction, a "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" without presuming the truthfulness of the plaintiff's allegations. Id. at 925 (citation omitted).

Rule 15 identifies two possible ways in which an amended pleading can relate back to an earlier pleading, thus allowing it to adopt the latter's filing date and not be time-barred by statutes of limitations or similar provisions. First, relation back is permitted when the law imposing the statute of limitations itself permits relation back. See Fed. R. Civ. P. 15(c)(1)(A).[6] Second, a pleading would relate back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). However, Rule 15 imposes an additional requirement for pleadings in this second group that also involve a change in the party against whom the claim is asserted. See Fed. R. Civ. P. 15(c)(1)(C). In order for pleadings in that subgroup to relate back, the party being added must have "(i) received such notice of the action that it will not be prejudiced in defending on the

---

[6] Rule 15 was amended in 2007 as part of a general restyling of the Federal Rules of Civil Procedure. All references in this opinion will be to the revised version of the rules, which are substantively the same as their predecessors. See Fed. R. Civ. P. 15 advisory committee's notes (2007) (describing changes to Rule 15 as "stylistic only").

9

merits . . . and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Id. Such pleadings also still must meet the common transaction or occurrence test of Rule 15(c)(1)(B). See id.

Makro argues that its amended complaint would relate back under Rules 15(c)(1)(B) and 15(c)(1)(C).[7] It interprets the former provision as requiring that the amended filing rely on the same factual basis as the original pleading rather than that it use an analogous theory of recovery. In addition, Makro claims that UBS had sufficient notice and knowledge of the potential qui tam action so that no prejudice would ensue by permitting relation back. This lack of prejudicial effect would thus mean that its amended complaint fulfilled the requirements of Rule 15(c)(1)(C).

UBS asserts that permitting relation back in this situation would be improper both as a general matter and as pertains to the requirements of Rule 15(c)(1)(C). It views the original and amended complaints as effectively constituting two completely distinct actions. Whereas the United States was UBS's co-defendant in the original diversity suit, it was a co-plaintiff suing UBS in the amended FCA suit. UBS interprets Rule 15(c) as permitting relation back in situations where it

_____

[7] Both parties concede that Rule 15(c)(1)(A) would not apply since the FCA contained no specific provision permitting relation back.

10

would be equitable (or at least not inequitable) to both parties. Given the different nature of the actions involved in the two complaints, allowing the amended complaint to relate back would unfairly disadvantage UBS by limiting its ability to take advantage of the defenses offered by the FCA. In addition, UBS claims that the fundamental shift in the nature of the complaints meant that it had neither notice nor knowledge that Makro might bring a qui tam action. As a result, the amended complaint would not qualify for relation back under Rule 15(c)(1)(C).[8]

As a preliminary matter, we find that Makro's amended complaint would have to satisfy the requirements of Rule 15(c)(1)(C) to relate back to the original complaint. Though that rule technically references amendments that change the parties against whom claims are asserted, we have previously applied it to situations in which new plaintiffs were added. See Cliff v. Payco Gen. Amer. Credits, Inc., 363 F.3d 1113, 1131–33 (11th Cir. 2004) (applying Rule 15(c)(1)(C) to a complaint that added a new plaintiff and rejecting relation back in such a situation). This application also aligns with the policy considerations undergirding Rule 15, namely fairness to all parties regarding the imposition of statutes of

---

[8] Though UBS discusses the Rule 15(c)(1)(C) issue separately from its general objections to the use of Rule 15, it does not state whether it views the former as a refinement of the latter or as a distinct issue. However, it fails to specifically address any other Rule 15 provision, thus tacitly conceding that the amended complaint meets the same transaction or occurrence requirements of Rule 15(c)(1)(B).

limitations.[9]  In this case, the United States was added as a plaintiff in the amended complaint, thus triggering the additional requirements of Rule 15(c)(1)(C).  Makro does not contest this determination, as its briefs solely focus on how its amended complaint satisfies Rule 15(c)(1)(C) rather than whether it needed to do so.

We agree with UBS that the widely divergent nature of the two complaints means that the amended complaint would not relate back to the original complaint under Rule 15.  There is an intrinsic distinction between a non-qui tam action brought against the United States and other parties and a qui tam suit brought on behalf of the United States against its former co-defendant, regardless of whether the two claims derive from the same common facts.  "The purpose of the [FCA] . . . is to encourage private individuals who are aware of fraud being perpetrated against the government to bring such information forward."  Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1237 n.1 (11th Cir. 1999) (citation omitted).  Based on this understanding, Makro's original claim seeking personal recovery for fraud (and other torts) committed against it would be entirely inapposite from its qui tam claim seeking recovery for fraud committed against the United States.

---

[9] See Fed. R. Civ. P. 15 advisory committee's note (1966) ("[T]he chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.").  Though this interpretation could conflict with the language regarding "prejudice[] in defending on the merits" to the "party to be brought in by amendment," we view this text as referring to the defendant in all cases.  Fed. R. Civ. P. 15(c)(1)(C)(i).

Given this disjunction, Makro's amended complaint would meet neither the notice nor the knowledge requirements of Rule 15(c)(1)(C). "[T]he critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." Davenport v. United States, 217 F.3d 1341, 1345 n.8 (11th Cir. 2000) (citation omitted). A defendant, like UBS, that is sued as part of a non-qui tam claim cannot be said to be on notice that it might also be subject to a qui tam action, particularly when the United States was also a defendant in the initial suit. Similarly, such a defendant should not be expected to have known that a qui tam action would have been brought against it but for a mistake concerning the identity of the proper plaintiff. A reasonable defendant would not have assumed, based solely on this original complaint, that his co-defendant should have instead been suing him on the same basic facts.

The determination that relation back is inappropriate is further buttressed by the statutory structure of the FCA. As previously noted, the FCA permits private parties to file qui tam actions but specifically limits the circumstances in which they can do so. See 31 U.S.C. § 3730(b)(5) (2003) ("first-to-file" bar); 31 U.S.C. § 3730(b)(4) (1982) (repealed 1986) ("government knowledge" bar). Since the underlying purpose of the FCA is to encourage private disclosure of false claims harming the government, these limitations correlate with the idea that the private

13

plaintiff is merely acting as a stand-in for the government. The "first-to-file" bar reflects the understanding that a corresponding government-initiated action would have involved only a single suit. See United States ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1187 (9th Cir. 2001) (noting that the bar was intended "to promote incentives for whistle-blowing insiders and prevent opportunistic successive plaintiffs"). Similarly, the "government knowledge" bar represents deference to a governmental decision not to sue for a particular case of fraud. See United States ex rel. Weinberger v. State of Florida, 615 F.2d 1370, 1371 (5th Cir. 1980) (indicating that the bar was "properly invoked" when the government had sufficient evidence and information at the time the FCA suit was brought "to enable it adequately to investigate the case and to make a decision whether to prosecute" (citation omitted)). Permitting relation back to a non-qui tam claim would thus defeat the purpose of these limitations by allowing multiple private suits in situations where the government has chosen not to act.

Makro cites a number of cases where courts have permitted relation back under Rule 15 when the court would otherwise not have jurisdiction over the amended complaint. However, in all of those cases relation back was both equitable and not specifically barred by the statute. See, e.g., E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 163–64 (2d Cir. 2001) (allowing relation

14

back when the amount in controversy requirement for diversity jurisdiction changed and the original complaint met the previous standard); Carney v. Resolution Trust Corp., 19 F.3d 950, 953–54 (5th Cir. 1994) (per curiam) (permitting relation back when the statute in question contained provisions allowing for continuation of earlier suits).  In the case of Makro and the FCA, neither of those characteristics is present.  Permitting relation back would circumvent the deliberate roadblocks set up by the FCA as well as promote inequity by depriving UBS of the ability to rely on those same statutory protections.

Accordingly, we find that Makro's amended complaint does not relate back under Rule 15 to its original complaint.  As a result, the operative date for assessing Makro's amended complaint is the date it was actually filed.  Since Koch's qui tam claim was filed before that date, Makro's amended complaint would be barred by the "first-to-file" requirement.  Additionally, since the government already had knowledge of the Rees Report prior to Makro's qui tam claim, the amended complaint would not meet the "government knowledge" requirement.  The district court was thus correct in granting UBS's motion to dismiss the amended complaint.

B. Motion for Reconsideration

15

Makro also asserts that the district court erred in denying its motion for reconsideration or rehearing by failing to properly consider the cases it cited regarding the application of Rule 15 to amended complaints. We review denials of motion for reconsideration for abuse of discretion. See Corwin v. Walt Disney Co., 475 F.3d 1239, 1254 (11th Cir. 2007). For the reasons previously stated, we find that Makro's cited cases do not support the application of Rule 15 to a qui tam complaint. The district court therefore did not abuse its discretion in denying the motion for reconsideration.

### III. CONCLUSION

Makro claims that its amended qui tam complaint should relate back under Rule 15 to its original complaint, which did not involve a qui tam claim. We find that such a result would not comport with either the purpose behind or the statutory text of Rule 15. We thus affirm the district court's dismissal of Makro's amended complaint and denial of its motion for reconsideration.

**AFFIRMED**