[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10905

Non-Argument Calendar

_____

ROBERT DALE HARRIS,

Plaintiff-Appellant,

*versus*

KASEY P. WINGO,
individually,
MICHAEL D. CHAPMAN,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:18-cv-00017-JES-MRM

_____

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

After appellant Robert Harris was arrested, he sued several of the deputies from the Collier County Sheriff's Office who were involved in his arrest, including Michael Chapman, Kasey Wingo, and Scott Pepin, in federal district court, bringing a variety of claims under 42 U.S.C. § 1983 and state law. The district court granted summary judgment to the deputies on several of Harris's claims, including the § 1983 claim alleging that Chapman and Wingo conspired to violate Harris's civil rights and all of Harris's claims against Pepin. Harris's remaining claims against Chapman and Wingo were tried to a jury, which returned a verdict in the deputies' favor.

On appeal, Harris argues that the district court erred when it (1) denied his motion in limine to bar Chapman and Wingo from introducing evidence at trial showing that they had arguable probable cause to arrest Harris; (2) granted summary judgment to Chapman and Wingo on Harris's § 1983 conspiracy claim; and (3) granted summary judgment to Pepin on all the claims against him. After careful consideration, we affirm.

## I.

On April 4, 2014, Harris spent most of the day at a local storage facility, helping a friend who rented a unit at the facility to repair a motorcycle.[1] Harris left the storage facility around 9:30 pm, which was after the facility closed to the public as well as to those who rented storage units. Chapman, who was patrolling in the area, saw Harris exiting the storage facility on a bicycle and stopped him. Chapman was suspicious because there had been a number of burglaries in the area, and Harris was leaving the closed storage facility with a backpack. During the stop, Chapman was joined by Wingo and later Pepin. According to the deputies, they arrested Harris because he failed to comply with orders to get off his bicycle and to provide his name and date of birth upon request. Ultimately, Harris was charged with obstruction, battery on a law enforcement officer, aggravated assault on a law enforcement officer, resisting arrest with violence, and loitering and prowling. The prosecutor later dropped all the charges.

In January 2018, Harris filed his original complaint in this case against Chapman and Wingo. He alleged that during the April 2014 incident the deputies arrested him without arguable probable cause and severely beat him. He brought claims against Chapman and Wingo under 42 U.S.C. § 1983 for false arrest, excessive force,

---

[1] Because we write only for the parties, who are already familiar with the facts and proceedings in the case, we include only what is necessary to explain our decision.

malicious prosecution, and retaliation. He also brought a § 1983 claim alleging that the deputies conspired to violate his civil rights. With regard to the conspiracy claim, Harris stated that about a month before the April 2014 incident, he had complained about Chapman to Chapman's supervisor. Harris alleged that Chapman and Wingo arrested and beat him in April 2014 to "intimidate, harass, and teach [him] a lesson about reporting [Chapman's] misconduct." Doc. 1 at 53.[2] The complaint also included state law claims against Chapman and Wingo.

About four months later, on May 2, 2018, Harris filed an amended complaint. In the amended complaint, Harris continued to assert the same claims against Chapman and Wingo. He also added claims against Pepin. The amended complaint included § 1983 claims against Pepin for false arrest, excessive force, malicious prosecution, and retaliation. The amended complaint also included state law claims against Pepin.

After the parties completed discovery, the deputies filed summary judgment motions. We begin with Chapman's and Wingo's summary judgment motions. They sought summary judgment on the § 1983 claims for false arrest, malicious prosecution, and retaliation, arguing that they were entitled to qualified immunity because they had arguable probable cause to arrest Harris. And they sought summary judgment on Harris's § 1983 civil conspiracy claim based on the intracorporate conspiracy doctrine,

---

[2] "Doc." numbers refer to the district court's docket entries.

which generally bars conspiracy claims against government actors who are accused of colluding with others within the same organization.

Pepin filed his own motion for summary judgment, arguing that Harris's claims against him arising out of the April 2014 incident were time-barred. He explained that a four-year statute of limitations applied to all of Harris's claims. Because Harris's amended complaint, which added Pepin as a defendant, was filed more than four years after the limitations began to run, Pepin argued that he was entitled to summary judgment.[3]

In a series of orders, the district court disposed of the summary judgment motions. It granted in part and denied in part Chapman and Wingo's motions for summary judgment. The district court ruled that at the summary judgment stage Chapman and

---

[3] In the amended complaint, Harris alleged that Pepin also engaged in unconstitutional retaliation on June 10, 2014, when he issued Harris a warning for trespassing at a Dunkin' Donuts. Pepin sought summary judgment on this claim, arguing that there was no evidence that he was motivated by a retaliatory purpose when he issued the warning. The district court agreed with Pepin and granted him granted summary judgment on this claim.

Harris appears to argue on appeal that his retaliation claim challenging the June 2014 incident was timely, but he raises no argument in his opening brief on appeal challenging the district court's ruling that Pepin was entitled to summary judgment because there was no evidence he acted with a retaliatory purpose when he issued the trespass warning. Harris thus has forfeited any challenge to this portion of the district court's summary judgment order. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc) (recognizing that an issue not raised on appeal is deemed forfeited).

Wingo were not entitled to qualified immunity on the § 1983 claims for false arrest, malicious prosecution, and retaliation because when the evidence was viewed in the light most favorable to Harris, the deputies lacked arguable probable cause to arrest Harris.

But the district court granted summary judgment to Chapman and Wingo on the § 1983 civil conspiracy claim. The district court concluded that the intracorporate immunity doctrine barred this claim. The court acknowledged that there was "an exception to the doctrine when the alleged conduct of the conspirators violates the federal criminal code." Doc. 173 at 31. But the court found that this exception did not apply because Harris had "not alleged or otherwise established that the defendants engaged in conduct that violated the federal criminal code." *Id.* at 32.

The district court also granted Pepin's summary judgment motion. It concluded that Harris's claims against Pepin were untimely because he had waited more than four years from when the claims accrued to file suit. The court acknowledged that if Harris's amended complaint related back to his original complaint, then the claims would have been timely. But the district court found that as to the claims against Pepin, the amended complaint did not relate back to the original complaint.

Chapman and Wingo filed an interlocutory appeal, challenging the district court's summary judgment order that denied qualified immunity on the § 1983 false arrest, malicious prosecution, and retaliation claims. We affirmed the district court's denial of

22-10905                 Opinion of the Court                 7

qualified immunity. *See Harris v. Wingo (Harris I)*, 845 F. App'x 892 (11th Cir. 2021) (unpublished). We explained that because the case was at the summary judgment stage, we had to "[v]iew[] the facts in the light most favorable to Harris." *Id.* at 892. And after viewing the evidence in the light most favorable to Harris, we concluded that the deputies lacked arguable probable cause to arrest Harris. *See id.* at 895–96. But we cautioned that "the facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Id.* at 893 n.3 (internal quotation marks omitted).

After we issued our decision in *Harris I*, the case returned to the district court. The claims that remained for trial included the § 1983 claims against Chapman and Wingo for false arrest, excessive force, malicious prosecution, and retaliation.

Before trial, Harris filed a motion in limine to prevent Chapman and Wingo from introducing evidence at trial showing that they had arguable probable cause to arrest Harris. Harris argued that the decision in *Harris I* meant it was now the law of the case that Chapman and Wingo lacked arguable probable cause for the arrest. Harris asserted that only damages issued remained for trial.

The district court denied the motion. It explained that in *Harris I* we had viewed the evidence "in the light most favorable to" Harris and then concluded that the officers lacked arguable probable cause to arrest Harris and were not entitled to qualified immunity. Doc. 247 at 4–5. The district court explained that nothing in the *Harris I* decision barred Chapman and Wingo from

introducing evidence at trial showing that they had arguable probable cause to arrest Harris.

The case proceeded to a jury trial, which lasted four days. At the conclusion of the trial, the jury found that Harris failed to prove any of his claims by a preponderance of the evidence and returned a verdict in favor of Chapman and Wingo.

After the trial, Harris filed a motion for a new trial under Federal Rule of Civil Procedure 59, again arguing that the district court should not have allowed Chapman and Wingo to introduce evidence showing they had arguable probable cause to arrest Harris. The district court denied this motion, explaining that the "denial of summary judgment on a claim of qualified immunity does not establish liability for the underlying conduct." Doc. 268 at 4.

This is Harris's appeal.

## II.

There are several standards of review applicable to this appeal. We review the district court's denial of a motion for limine for abuse of discretion. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). Under the abuse-of-discretion standard, we may reverse a district court's decision only if the court "applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004) (internal quotation marks omitted).

"We review *de novo* the district court's grant of summary judgment, construing the facts and drawing all reasonable inferences in favor of the nonmoving party." *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018). Summary judgment is appropriate if the record gives rise to "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In addition, we review *de novo* a district court's application of the law of the case doctrine, including the mandate rule. *See Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). And we review *de novo* issues regarding the application of the statute of limitations. *See Harrison v. Digit. Health Plan*, 183 F.3d 1235, 1238 (11th Cir. 1999).

## III.

Harris raises three issues on appeal. He argues that the district court erred by (1) allowing Chapman and Wingo to present evidence at trial that they had arguable probable cause to arrest him; (2) granting summary judgment to Chapman and Wingo on the § 1983 conspiracy claim; and (3) granting summary judgment to Pepin. We address each issue in turn.

### A.

We begin with Harris's argument that the district court erred in denying his motion in limine. He says that in *Harris I*, this Court, in considering whether there was arguable probable cause for his arrest, "found" that he did not refuse to provide Chapman or Wingo with his name or date of birth. Appellant's Br. at 21. Given these findings and our Court's mandate rule, Harris argues, the district court erred in denying his motion in limine and allowing Chapman and Wingo to introduce evidence showing that Harris refused to provide his name and date of birth. We disagree.

The law of the case doctrine generally operates to preclude a trial court from revisiting issues that were decided explicitly or by necessarily implication in a prior appeal. *See Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1288 (11th Cir. 2010). "The mandate rule is a specific application of the law of the case doctrine." *Id.* (internal quotation marks omitted). Under the mandate rule, a district court, "upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate." *Id.* (internal quotation marks omitted).

Harris's argument that the district court violated the mandate rule rests on the assumption that in *Harris I* we resolved factual questions related to the existence of arguable probable cause, including whether Harris refused to provide his full name or date of birth. We did not. Harris's argument misunderstands the role of appellate courts, which do not resolve disputed issues of fact. It is

well established that "[f]actfinding is the basic responsibility of district courts, rather than appellate courts." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) (internal quotation marks omitted); *see Norelus*, 628 F.3d at 1289 (stating the "factfinding function . . . belongs . . . in the district court, not in this Court").

Furthermore, the substance of our decision in *Harris I* shows that we made no factual findings. When we issued our decision in *Harris I*, the case was at the summary judgment stage. Given this procedural posture, we "[v]iew[ed] the facts in the light most favorable to" Harris. *See Harris I*, 845 F. App'x at 892. And it was because we viewed the facts in the light most favorable to Harris that we said Harris did not refuse to provide his name and birthdate to Chapman and Wingo. But we never purported to resolve this disputed factual question. Indeed, in our decision we cautioned the parties that "the facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Id.* at 893 n.3 (internal quotation marks omitted).

Because nothing in our decision in *Harris I* decided any factual question, the district court did not violate the mandate rule when it denied Harris's motion in limine and allowed Chapman and Wingo to introduce evidence to show that Harris refused to provide his full name or date of birth.[4]

_____

[4] For the first time in his reply brief, Harris suggests that even if he refused to provide his name and birthdate, Chapman and Wingo lacked arguable

**B.**

We now turn to Harris's argument that the district court erred in granting summary judgment to Chapman and Wingo on his § 1983 claim alleging that they conspired to violate his constitutional rights. We agree with the district court that this claim is barred by the intracorporate conspiracy doctrine.

A plaintiff has a § 1983 claim for conspiracy to violate constitutional rights when he shows "a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). Among other things, the plaintiff "must prove the defendants reached an understanding to violate [his] constitutional rights." *Id.* (internal quotation marks omitted).

Harris's § 1983 conspiracy claim against Chapman and Wingo fails because of the intracorporate conspiracy doctrine. For a conspiracy to be formed, there must be an agreement among multiple actors. *See id.* at 1261. But when an agency's employees act within the scope of their employment, their actions are attributed to the agency itself. *Id.* Under the doctrine, an agency's employees, "when acting in the scope of their employment, cannot

---

probable cause to arrest him. But this argument that the evidence at trial was insufficient to establish that the deputies had arguable probable cause to arrest Harris "come[s] too late"; we do not address issues raised by an appellant for the first time in a reply brief. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014).

conspire among themselves." *See id.* (explaining that actions of the employees are attributed to the agent itself "thereby negating the multiplicity of actors necessary for the formation of a conspiracy" (internal quotation marks omitted)). Here, because all the deputies were acting within the scope of their employment with the Collier County Sheriff's Office,[5] the intracorporate conspiracy doctrine barred Harris's § 1983 conspiracy claim.

Harris nevertheless argues that an exception to the intracorporate conspiracy doctrine applies. We have previously recognized an exception when there is "evidence of conduct constituting a criminal conspiracy in violation of the *federal criminal code*." *Id.* at 1263 (emphasis added). Although Harris alleged a conspiracy existed, he has come forward with no evidence of conduct constituting a criminal conspiracy in violation of the *federal criminal code*. In the absence of such evidence, we affirm the district court's order granting summary judgment to Chapman and Wingo on the § 1983 conspiracy claim.

---

[5] Harris does not dispute that the deputies were acting within the scope of their employment. *See Grider*, 618 F.3d at 1261 ("The scope-of-employment inquiry is whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business.").

## C.

We next consider Harris's argument that the district court erred in granting summary judgment to Pepin based on the statute of limitations. We conclude that the district court did not err.

We agree with the district court that Harris's claims against Pepin were time-barred. Indeed, Harris does not dispute that applicable limitations period was four years and that he waited more than four years after the claims accrued to sue Pepin.[6]

Harris nevertheless argues that his claims against Pepin were timely because the claims against Pepin in the amended complaint related back to the original complaint, which was filed within the four-year limitations period.

To determine whether the amended complaint related back to the original complaint, we look to Rule 15(c)(1) of the Federal Rules of Civil Procedure. *See Makro Cap. of Am. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008). Under Rule 15(c)(1), "[a]n amendment to a pleading relates back to the date of the original

---

[6] On appeal, Harris argues that his § 1983 civil conspiracy claim against Pepin was timely because he filed suit within four years of when this limitations period began to run. But Harris overlooks that he never brought a § 1983 civil conspiracy claim against Pepin. The amended complaint included one count alleging a § 1983 civil conspiracy claim and that count (Count XII) was brought against only Chapman and Wingo.

pleading when . . . the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A).[7]

On appeal, Harris argues that the amended complaint adding the claims against Pepin related back to the original complaint because Florida law, which supplies the applicable statute of limitations, would allow the relation back. We disagree.

Florida[8] recognizes a "judicial policy of freely permitting amendments to the pleadings" and usually allows for the relation back of pleadings. *See Caduceus Props., LLC v. Graney*, 137 So. 3d

_____

[7] Rule 15(c)(1)(C) also provides that an amendment that adds a new party relates back when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading, the party to be brought in by amendment received notice of the action within the period for serving the summons and complaint, and the party to be brought in by the amendment "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

Harris has forfeited any argument that the pleading relates back under Rule 15(c)(1)(C) because he did not raise this issue in his opening brief. Although Harris tried to argue in his reply brief that the amended complaint related back under Rule 15(c)(1)(C) that argument comes "too late." *Sapuppo*, 739 F.3d at 683. Even assuming that Harris did not forfeit the issue of whether the amended complaint related back under Rule 15(c)(1)(C), we cannot say that the amended complaint related back under this provision. There is no evidence that Pepin knew or should have known that the action would have been brought against him but for a mistake concerning his identity.

[8] Both Harris and Pepin agree that Florida law supplies the relevant statute of limitations.

987, 991–92 (Fla. 2014). But the relation-back doctrine generally does not apply when "an amendment seeks to bring in an entirely new party defendant to the suit after the statute of limitations period had expired." *Id.* at 993–94.

Florida courts will treat an amended pleading adding a new defendant as relating back only when the new defendant named has a "sufficient identity of interest" with an existing defendant such that "the new defendant is essentially one in the same as the existing defendant." *Russ v. Williams*, 159 So. 3d 408, 410–11 (Fla. Dist. Ct. App. 2015) (internal quotation marks omitted). An amendment will not relate back simply because the new defendant has a close relationship with a defendant named in the original complaint and knew of the lawsuit during the limitations period. *See id.* (holding that amended complaint, which added claim against wife, did not relate back to original complaint, which named husband alone as defendant, in suit arising out of an automobile accident even though wife was aware of original complaint before limitations period expired). Indeed, Florida courts have treated amendments adding new parties as relating back only when the amendment "involved the substitution of one corporate entity for another or merely changed the capacity in which a defendant has been sued." *Id.* at 410–11 (citations omitted).

Here, we conclude that Florida law would not allow the relation back. As we mentioned above, Florida generally does not treat an amendment that adds a new party after the limitations period expired as relating back to the original complaint. *See*

*Caduceus Props*, 137 So. 3d at 993–94. And we cannot say that the exception to this general rule applies because there was no evidence that Pepin was essentially the same as any of the defendants named in the original complaint. *See Russ*, 159 So. 3d at 410–11. Because Harris's claims against Pepin were untimely, we affirm the district court's order granting Pepin's motion for summary judgment.

## IV.

For the above reasons, we affirm the district court's judgment.

**AFFIRMED.**